**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

GLENROY SCHECKELLS,

                                    Petitioner,

    v.                                                              9:03-CV-1219
                                                                    (LEK/DEP)

RAYMOND J. CUNNINGHAM, *Superintendent,*

                                    Respondent.
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PETITIONER:**

**GLENROY SCHECKELLS**
Petitioner, *pro se*
98-A-6503
Washington Correctional Facility
72 Lock 11 Lane
P.O. Box 180
Comstock, NY 12821

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**                      **BRIDGET ERIN HOLOHAN, Esq.**
Office of the Attorney General                Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

**LAWRENCE E. KAHN**
**UNITED STATES DISTRICT JUDGE**

_____**MEMORANDUM-DECISION AND ORDER**_____

## I. BACKGROUND

*        A.  State Court Proceedings*

        According to the testimony adduced at trial, on the morning of November 4, 1997,

Courtney Wedderburn ("Wedderburn") approached a friend, Norman Edwards ("Edwards"),

and his downstairs neighbor, petitioner Glenroy Scheckells ("Scheckells" or "petitioner"),

sitting outside the residence.  Transcript of Trial of Glenroy Scheckells (7/28/98) ("Trial Tr.")

at 1085, 1087.  Wedderburn approached the two men and accused Scheckells of "stabbing" a

tire on Wedderburn's car.[1]  Id. at 1089.  Wedderburn then invited Edwards to look at the

damaged tire, and as the two went to Wedderburn's car, Scheckells left the porch and entered

his residence.  Id. at 1090-93.  Soon thereafter, Scheckells emerged from his home carrying a

shotgun, which he loaded and pointed the at Wedderburn.  Id. at 1093-95. Scheckells then said

that he had not slashed the car's tire.  Id.  Wedderburn walked toward Scheckells and asked him

if he was going to shoot.  Id. at 1096.  Scheckells shot Wedderburn in the chest as Wedderburn

began walking up the stairs on the porch.  Id. at 1096.[2]  Edwards, who had witnessed the

foregoing, testified that after the shot was fired, he ran from the home and that soon after he

heard the sound of a second gunshot.  Id. at 1099, 1102-03.

After shooting Wedderburn, Scheckells boarded a bus bound from Schenectady to

Albany.  Id. at 1493.  Once there, he "walked around for a while confused, crying," and

eventually boarded a bus destined for New York City.  Id. at 1494.  He was subsequently

arrested by law enforcement agents on December 31, 1997 while returning to Albany from New

York City, id. at 1017, 1494, after which he was taken to the Albany Police Department for

---

[1]  Prior to November 4, 1997, the Wedderburns and Scheckells had had
disagreements about the parking.  Trial Tr. at 1192.  The week prior to this incident,
Scheckells had discovered that a tire on his wife's car was flat, and later that same day a tire
on Courtney Wedderburn's car was slashed.  Id. at 1193-95.

[2]  Testimony at trial suggested that at the time Wedderburn was shot, he only had car
keys in his hand.  Trial Tr. at 1098.

booking.  Id. at 1021.

As a result of the foregoing, a Schenectady County grand jury returned a multi-count indictment against Scheckells on February 5, 1998.  See Indictment No. 198-8 (reproduced in Respondent's Appendix on Appeal at RA1-5) ("Indictment").  Scheckells was charged with two counts of second degree murder; the first count accused him of intentionally causing Wedderburn's death (in violation of N.Y. PENAL LAW § 125.25(1)), and the second count charged that Scheckells, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which created a grave risk of danger to Wedderburn and caused his death (contrary to N.Y. PENAL LAW § 125.25(2)).  Scheckells was also charged with attempted second degree murder and attempted first degree assault with respect to the shot he allegedly fired at Edwards.  See Indictment, Counts Three, Four.  The Indictment also charged Scheckells with first degree reckless endangerment, criminal use of a firearm in the first and second degrees, criminal possession of a weapon in the second degree, and two counts of criminal possession of a weapon in the third degree.  See Indictment, Counts Five through Ten.

On July 21, 1998, Scheckells' jury trial on the above-referenced charges commenced in Schenectady County Court before County Court Judge Guy P. Tomlinson.  At that trial, Scheckells claimed that he shot Wedderburn in self defense.  Specifically, Scheckells testified as follows:

> Scheckells:  [Wedderburn] called Junior[3] off the porch, and [opened] the hatch back of the car and showed him the tire.  "[Scheckells] stabbed my tire -- he is going to pay for it."  During the period of time he was saying that, I was standing there smoking my

---

[3]  Junior is a nickname of Norman Edwards.  See Trial Tr. at 1088.

3

cigarette.  I know I didn't do it.

Defense
Counsel:        What did you do after that?

Scheckells:     Then [I] went back in the house and closed my
                door.

Defense
Counsel:        And then what happened?

Scheckells:     They pushed my door back in, and came inside.

Defense
Counsel:        And by "they" you mean who?

Scheckells:     Junior and Mr. Wedderburn.

Defense
Counsel:        Okay.
                And what did they do?

Scheckells:     Push my door, came inside, had a gun and pointed
                the gun at me and squeezed it.

Defense
Counsel:        Now who had the gun?

Scheckells:     Mr. Wedderburn.

Defense
Counsel:        And what gun was it?

Scheckells:      It was a 9 millimeter, the same gun he always had.

Defense
Counsel:        Okay, and what did he do with it?

Scheckells:      Pointed it at me and squeezed it.

Defense
Counsel:        What happened?

Scheckells:      It had jammed.  And I ran.

4

Defense
Counsel:        Where did you run?

Scheckells:     I ran into the kitchen.

Defense
Counsel:        What did you do?

Scheckells:     Ran in the kitchen and get the shotgun that I had.

Defense
Counsel:        And then what happened?

Scheckells:     Squeezed it one time.

Defense
Counsel:        Okay.
                And what did you see?

Scheckells:     Squeezed it one time, and I didn't even know they
                got hit.  Both of them ran through the door, and
                already saw it.

Defense
Counsel:        And then what did you see?

Scheckells:     I walk right outside to where the porch, standing on
                the porch, and I saw both of them run out.  He
                stagger and holding onto the porch.  All of a sudden,
                I see blood spraying all over the place.

Defense
Counsel:         When you say, "he" who do you mean?

Scheckells:      Courtney.

Defense
Counsel:        You said he staggered?

Scheckells:      Yes, staggered.

Defense
Counsel:        Where did he stagger?

Scheckells:      Stagger over to where the porch is at.

Trial Tr. at 1486-87.

The jury acquitted Scheckells of the murder charges, but found him guilty of the lesser included offense of second degree manslaughter.  Id. at  2006-07.  The jury also acquitted Scheckells of the attempted murder and attempted assault charges relating to Edwards, id. at 2007-08, but found him guilty of the remaining charges brought against him in the Indictment. Id. at 2008-09.

On October 9, 1998, Scheckells appeared before Judge Tomlinson for sentencing. Transcript of Sentencing of Glenroy Scheckells (10/9/98) ("Sentencing Tr.").  At that proceeding, Scheckells' counsel also argued in support of his previously filed motion to set aside the jury's verdict based upon his claim that the jury's verdict was inconsistent.  See App. at A26-28.  Counsel argued that the jury's verdict was inconsistent because Scheckells was acquitted of the intentional crimes of murder and attempted murder, yet he was convicted of the weapons possession charge, which required, *inter alia*, a finding by the jury that Scheckells intended to use a weapon unlawfully against another.  See Sentencing Tr. at 4-6.  After hearing the district attorney's argument in opposition to that application, Judge Tomlinson denied Scheckells' motion.  Id. at 10-12.  Judge Tomlinson sentenced Scheckells to a determinate term of five (5) to fifteen (15) years imprisonment on the second degree manslaughter conviction, and a consecutive term of seven and one-half (7 ½) to fifteen years (15)  imprisonment on the weapons possession conviction.  Id. at 24-25.  The County Court also sentenced Scheckells to lesser terms on the remaining convictions, to run concurrently with the other sentences imposed on Scheckells.  Id. at 25.

6

Scheckells appealed his conviction to the New York State Supreme Court, Appellate Division, Third Department.  In that appeal, Scheckells' appellate counsel argued that the jury's verdict was repugnant and that Scheckells' conviction must therefore be overturned.  See Appellant's Brief on Appeal (reproduced in Appellate Records at 1-18) at 10-18.  Scheckells also filed a *pro se* appellate brief in support of his appeal.  See *Pro Se* Appellate Brief (reproduced in Appellate Records at 161-89).  In that brief, Scheckells argued that: (1) the prosecution violated Scheckells' rights under People v.Rosario;[4] (2) his right to be tried before an impartial jury was violated; (3) the imposition of consecutive sentences on him by the trial court constituted reversible error; and (4) he was denied his right to be present at a material stage of the criminal proceeding below.  Id. at 12-25.  On May 8, 2003, the Third Department denied Scheckells' appeal.  See People v. Scheckells, 305 A.D.2d 723 (N.Y. App. Div. 3d Dep't. 2003).  On August 20, 2003, New York's Court of Appeals denied Scheckells' application for leave to appeal to that court.  See People v. Scheckells, 100 N.Y.2d 598 (2003).

### B.  Proceedings in This Court

Petitioner filed a Petition for a writ of habeas corpus, on October 6, 2003.  See Dkt. No. 1.  This Court determined that the Petition was deficient and directed Scheckells to filed an amended petition if he wished to pursue this action.  Oct. 2003 Order (Dkt. No. 4).  On November 6, 2003, Scheckells filed an Amended Petition in this matter pursuant to this Court's directive.  See Am. Pet. (Dkt. No. 5).  In his Amended Petition, Scheckells argues that: (1) his

---

[4] People v. Rosario, 9 N.Y.2d 286 (1961).  Rosario requires the prosecutor to disclose, prior to trial, pretrial statements made by prosecution witnesses.  See Phillips v. Walker, No. 92 CIV. 8018, 1996 WL 1236, at *2 (S.D.N.Y. Jan. 2, 1996), aff'd, 107 F.3d 3 (2d Cir. 1997).

conviction must be reversed because the prosecutor failed to provide him with <u>Rosario</u>

material; (2) he was deprived of his constitutional right to be tried by an impartial jury; (3) the

trial court improperly imposed consecutive sentences on petitioner; and iv) he was deprived of

his right to be present at all critical stages of his trial.  <u>See</u> Am. Pet. (Dkt. No. 5) at 5-6.  By

order filed December 8, 2003, this Court directed the respondent to file his response to the

Amended Pleading, <u>see</u> Dkt. No. 6, and on April 2, 2004, the Office of the Attorney General for

the State of New York, acting on respondent's behalf, filed a response in opposition to

Scheckells' Amended Petition.  <u>See</u> Response to Pet. (Dkt. No. 11).  Petitioner thereafter

submitted a "traverse" in further support of his Amended Petition.  <u>See</u> Traverse (Dkt. No. 13).

## II. DISCUSSION

### A.  Standard of Review Applicable to Scheckells' Claim

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

court may award habeas corpus relief with respect to a claim adjudicated on the merits in state

court only if the adjudication of the claim: (1) was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States; or (2) was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.  <u>DeBerry v. Portuondo</u>, 403 F.3d 57, 66 (2d

Cir. 2005) (citing 28 U.S.C. § 2254(d)).  AEDPA also requires that in any such proceeding "a

determination of a factual issue made by a State court shall be presumed to be correct [and]

[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. § 2254(e)(1); <u>see also</u> <u>DeBerry</u>, 403 F.3d at 66; <u>Boyette v.</u>

<u>LeFevre</u>, 246 F.3d 76, 88 (2d Cir. 2001).

A state court decision violates the "contrary to" clause of section 2254(d)(1) when it "reaches a result opposite to the one reached by the Supreme Court on the same question of law or arrives at a result opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts.'" Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A federal habeas court may only grant the writ under the "unreasonable application" clause of the section when the state court's decision "identifies the correct rule of law but applies that principle to the facts of the prisoner's case in an unreasonable way." Earley, 451 F.3d at 74 (citing Williams, 529 U.S. at 413). A federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." Williams, 529 U.S. at 409; see also Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001). Objectively unreasonable means "'some increment of incorrectness beyond error is required'" in order to grant a federal habeas application. Earley, 451 F.3d at 74 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

*B.  Substance of Scheckells' Claims*

### 1. Ground One

In his first ground for relief, Scheckells argues that his conviction must be set aside because the prosecutor violated the principles announced by New York's Court of Appeals in Rosario during the course of the criminal matter below. See Am. Pet. (Dkt. No. 5) at Ground One. Respondent contends that Rosario claims are not cognizable in federal habeas petitions and that therefore this ground in Scheckells' amended petition must be denied. See Respondent's Memorandum of Law in Opposition(Dkt. No. 11, Attach. 1) ("Resp. Mem.") at

4.

Respondent correctly argues that because alleged Rosario violations are grounded in state law, claimed Rosario violations cannot form a basis for federal habeas relief.  See Randolph v. Warden, Clinton Corr. Facility, No. 04 Civ. 6126(SAS), 2005 WL 2861606, at *5 (S.D.N.Y. Nov. 1, 2005) ("the failure to turn over Rosario material is not a basis for habeas relief as the Rosario rule is purely one of state law"); Martinez v. Walker, 380 F. Supp.2d 179, 186 n.5 (W.D.N.Y. 2005) (Rosario claim "does not present an error of constitutional magnitude and therefore is not cognizable on habeas review.  Unlike a Brady claim, a Rosario claim derives solely from a New York state law right.") (citations omitted); Del Pilar v. Phillips, No. 03 Civ.8636 (GBD AJP), 2004 WL 1627220, at *13 n.33 (S.D.N.Y. July 21, 2004) ("To the extent that [petitioner's] claim is based on a Rosario violation, it must fail, because a habeas petition can only be granted to remedy some violation of federal law; the obligation to turn over Rosario material arises under state law.") (internal quotation and citation omitted).  However, respondent's argument that this ground must therefore be dismissed appears to overlook the well-settled principle that *pro se* pleadings are to be construed liberally.  See Chambers v. United States, 106 F.3d 472, 475 (2d Cir. 1997).  In light of that command, district courts in this Circuit have broadly construed habeas petitions alleging violations of New York's Rosario rule as claims alleging a violation of a defendant's rights under Brady v. Maryland, 373 U.S. 83 (1963).[5]  See, e.g., Perry v. Johnson, No. 00 Civ. 2380(JGK RLE), 2003 WL 22019738, at *3

_____

[5]  In Brady, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.

(S.D.N.Y. Aug. 22, 2003) (construing Rosario claim as Brady claim for purposes of § 2254 application) (citations omitted); Forrest v. Mitchell, No. 91 Civ. 7922 (MBM), 1992 WL 367039, at *2 (S.D.N.Y. Dec. 2, 1992) (Rosario claim "should be analyzed under Brady"), aff'd, 22 F.3d 1092 (2d Cir. 1994).  This Court therefore considers Scheckells' first ground for relief as one alleging a violation of his Brady rights.

### i.  Clearly Established Supreme Court Precedent

In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  To prove a Brady violation, a habeas petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued from the withholding.  Moore v. Illinois, 408 U.S. 786, 794-95 (1972); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

### ii.  Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

The prosecutor called C. Baumgart, a nurse who was working at the hospital where Wedderburn was brought the day he was shot, as a witness in its case-in-chief against Scheckells.  See Trial Tr. at 727-28.  While cross-examining Baumgart, defense counsel learned that she had created a record of treatment relating to Wedderburn while he was at the hospital. id. at 750.  Defense counsel never received a copy of those medical records prior to trial, id. at

11

757, and he therefore claimed, outside the presence of the jury, that the prosecution's failure to provide the defense with those records constituted a <u>Rosario</u> violation.  <u>Id.</u>  In response, the prosecutor agreed to provide those records to the defense, however, he argued that the medical records about which the witness testified did not constitute <u>Rosario</u> material.  <u>Id.</u> at 757-58.

Judge Tomlinson agreed with defense counsel that the records constituted <u>Rosario</u> material and accordingly directed the prosecutor to provide to the defense any records that related to Wedderburn to which a prosecution witness might potentially refer in his or her trial testimony.  <u>Id.</u> at 758-60.  The trial court also granted defense counsel's request for permission to recall Baumgart if further cross-examination was required after counsel reviewed the medical records the prosecution promised to provide.  <u>Id.</u> at 757.[6]

In denying Scheckells' claimed <u>Rosario</u> violation, the Third Department found that the trial court "properly concluded that the delay in the[] production [of the medical records] did not cause [Scheckells] to suffer substantial prejudice."  <u>Scheckells</u>, 305 A.D.2d at 724.  This Court must, therefore, ascertain whether that finding is either contrary to, or represents an unreasonable application of, clearly established Supreme Court precedent.

In considering whether a party has established the first element of a <u>Brady</u> claim, the accused must show that the evidence at issue was favorable to the accused.  The Second Circuit has held that evidence is favorable to the accused if it "either tends to show the accused is not guilty or impeaches a prosecution witness."  <u>Boyette</u>, 246 F.3d at 90 (citing <u>United States v. Bagley</u>, 473 U.S. 667, 674 (1985)); <u>see also</u> <u>Strickler</u>, 527 U.S. at 281.  In the criminal matter

---

[6] The record reflects that after defense counsel received those records, he did not make any application to the court to recall the witness.  <u>Id.</u> at 909-10, 916.

below, Scheckells did not demonstrate that the evidence purportedly suppressed by the prosecutor was either exculpatory or could have been utilized by the defense to impeach a prosecution witness.  Thus, petitioner has not established the withheld evidence was favorable to him and has not met the first prong of a Brady claim.[7]

Moreover, Scheckells cannot sustain a Brady claim because he has not established that the medical records were "suppressed" by the prosecution.  To show that the records were suppressed, Scheckells must demonstrate that his attorney did not possess the evidence in time for its effective use at trial.  When "a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."  Lutes v. Ricks, 02-CV-1043(TJM), 2005 WL 2180467, at *15 n.19  (N.D.N.Y. Sept. 9, 2005) (internal quotation and citations omitted).  The Third Department found that Scheckells was not prejudiced by the delay in the production of the hospital records, see Scheckells 305 A.D.2d at 724, and nothing in the record before this Court suggests that his defense to the charges against him was prejudiced, in any way, by the timing of the disclosure of those records.  Thus, Scheckells has not established this aspect of a Brady claim.  See, e.g., Lutes, 2005 WL 2180467, at *15 & n.19; Tobias v. Portuondo, 367 F. Supp. 2d 384, 389 (W.D.N.Y. 2004)  ("[t]he Second Circuit ha[s] have never interpreted due process of law as requiring more than that Brady material must be disclosed in time for its

_____

[7]  Scheckells' failure to establish the first element of a Brady claim may be attributable in part to the fact that in Rosario, New York's Court of Appeals "went beyond requirements later defined in Brady and its progeny, holding that a prosecutor must disclose *any* prior statement of its witness, regardless of whether it is favorable to the accused." Lyon v. Senkowski, 109 F.Supp.2d 125, 139 (W.D.N.Y. 2000).  Thus, "Rosario is a broader rule than Brady."  Gumbs v. Kelly, No. 97 CIV 8755 (WHP AJP), 2000 WL 1172350, at *6 (S.D.N.Y. Aug. 18, 2000) (internal quotation and citation omitted).

effective use at trial").[8]

Finally, the suppression of exculpatory evidence does not amount to a constitutional violation unless the evidence is material, such that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682; Boyette, 246 F.3d at 91 (citing Bagley); see also Cantone v. Superintendent, N.Y. Corr. Facility at Green Haven, 759 F.2d 207, 213 (2d Cir. 1985); Chisholm v. Girdich, No. 02-CV-5502 (JBW), 2004 WL 315226, at *5 (E.D.N.Y. Feb. 17, 2004) (citing Strickler); Livingston v. Herbert, 00-CV-1698 (LEK/DRH), 2002 WL 59383, at *3 (N.D.N.Y. Jan. 3, 2002) (Homer, M.J.), adopted, (N.D.N.Y. Jan. 25, 2002) (Kahn, D.J.).

In this case, petitioner has not established how the jury's verdict would have been impacted, in any way, had the defense been in possession of the evidence relating to the

---

[8] In his traverse, petitioner appears to suggest that evidence other than the medical records discussed above was also suppressed by the prosecutor. Specifically, petitioner contends that:

> In further support of the claim already raised by this petitioner it must be noted that during the court (sic) of the trial, the prosecutor failed to timely file and present Rosario material that would have maintain (sic) and supported is (sic) position of innocence.

See Traverse (Dkt. No. 13) at 6. However, petitioner does not discuss, in any way, the evidence upon which this unexhausted claim is based, or refer to any portion of the state court record as support for such claim. Scheckells' failure to provide record support for this (possible) aspect of his federal habeas petition represents a failure on his part to both comply with Rule 2(c) of Rules Governing Section 2254 cases, as well as to shoulder his burden of proof in the present action. See Gary v. Conway, No. 03-CV-0480 (LEK), 2006 WL 3290149, at *15 (N.D.N.Y. Nov. 13, 2006) (Kahn, D.J.) (citation omitted); Banks v. New York State Dept. of Corr. Servs., No. 01 CIV. 3985 (RWS), 2001 WL 1448612, at *2 (S.D.N.Y. Nov. 15, 2001) ("a petition may be dismissed if it contains only vague or conclusory allegations") (citation omitted).

medical treatment Wedderburn received prior to trial.[9]  Thus, Scheckells has not established

this final element of a <u>Brady</u> claim.  <u>Boyette</u>, 246 F.3d at 91; <u>Livingston</u>, 2002 WL 59383, at *3

("Absent . . . materiality, a <u>Brady</u> violation does not require a reversal") (citation omitted).

A habeas petitioner must satisfy all three elements of a <u>Brady</u> claim to prevail on such a

claim.  <u>See</u> <u>Hughes v. Phillips</u>, 457 F. Supp.2d 343, 359 (S.D.N.Y. 2006) (citing <u>Leka v.</u>

<u>Portuondo</u>, 257 F.3d 89 (2d Cir. 2001)).  Since Scheckells has not established any of the three

factors required for a successful <u>Brady</u> claim, this Court finds that the Third Department's

decision denying this claim, which was raised by petitioner in the context of an alleged <u>Rosario</u>

violation, is neither contrary to, nor represents an unreasonable application of, <u>Brady</u> and its

progeny.  Therefore, Scheckells' first ground for relief is denied.

### 2. Ground Two

In his second ground, petitioner asserts that his conviction must be set aside because he

was deprived of his right to be tried by an impartial jury under the Sixth Amendment to the

United States Constitution.  <u>See</u> Am. Pet. (Dkt. No. 5) at Ground Two.  The Third Department

found this claim to be without merit when raised by Scheckells on appeal.  <u>See</u> <u>Scheckells</u>, 305

A.D.2d at 724.  This Court must, therefore, ascertain whether that finding is either contrary to,

or represents an unreasonable application of, clearly established Supreme Court precedent.

---

[9]  In describing the contents of the medical records that form the basis of this claim, the witness noted that such records would include the patient's name, address, date of birth, source of payment and the "chief complaint" of the victim that resulted in his hospitalization.  Trial Tr. at p. 752.  That witness also noted that she had created a "flow sheet" relating to Wedderburn, which included the type of treatment he received while at the hospital, his vital signs, and other medical data.  Trial Tr. at p. 753.

### i.  Clearly Established Supreme Court Precedent

The Sixth Amendment guarantees individuals the right to a trial by an impartial jury. Duncan v. Louisiana, 391 U.S. 145, 159 (1968).  The Supreme Court has held that "while impaneling a jury the trial court has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor."  Dennis v. United States, 339 U.S. 162, 168 (1950) (citations omitted).  A federal habeas court confronted with a challenge to the composition of a petit jury must be confident that the *voir dire* did not result in a jury which rendered the petitioner's trial fundamentally unfair.  Murphy v. Florida, 421 U.S. 794, 799 (1975).  Bias on the part of a juror is only properly found where the Court finds that both the nature and strength of the opinion formed by the juror regarding a defendant raised the presumption of partiality.  Irvin v. Dowd, 366 U.S. 717, 723-24 (1961).

### ii.  Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

Scheckells argues in his habeas application that one of the trial jurors "improperly contacted and tried to influence the other jurors" at his trial.  See Am. Pet. (Dkt. No. 5) at Ground Two.  He further contends that the County Court's failure to "give instructions" to the jury or otherwise "cure this error," deprived him of his right to a fair trial.  Id.

The record reflects that during the course of Scheckells' trial, the prosecution became aware that one of the jurors may have briefly discussed the criminal trial for which he was serving as a juror with his employer.  Trial Tr. at 1307.  The following colloquy then ensued between that juror and the trial court regarding this issue:

> The Court:          Good morning ....  If you have a seat, any
>                     seat in the jury box is fine.  Note that the

16

parties are present and [the] juror in Seat 9 ... is present in the courtroom.... I have asked you to come into the courtroom because I am making an inquiry to determine if the jurors have been abiding by the Court's instruction not to discuss this case among themselves, or with anyone else, and not to decide anything about this case, to keep an open mind about the case. And the Court has some information perhaps you have been asked a question, or made some statement about the case to someone who may work with you, an employer or employee or someone that you may work with. First, let me ask you, has there been any occasion where you have discussed the case with anyone?

The Juror:     No, just when I first got picked, you know, and what we heard the first day what it was about, but that is all.

The Court:     All right.
The specifics I attempted to find, the specifics of what someone may have heard, and again it's secondhand, it's hearsay, so I don't have any firsthand knowledge, I am just relying upon someone having said that they heard, someone heard or overheard some conversation about the case. It was conveyed to me that you may have been at work, and someone may have asked you what the case was about, and that you may have said, it was a murder case, and that you may have been asked, what do you think of it? And that you may have said something to the effect, that the police work was sloppy. Let me ask you, has there been any such conversation that you've had with anyone about the case?

The Juror:     Not to any extent, just like what I said. They asked, what were you in there for. And I

17

just said it was a murder trial.

The Court:     Do you recall, or are you aware of any other conversation that you have had with anyone else about the case beyond that?

The Juror:     No, I don't go any further than that.  If anybody asks, they say, oh, you are on jury duty, "Yes. What it is about?"  And all I say, it's a murder case.  So I am there for three weeks.

The Court:     Do you recall having any conversation with anyone about the police work?  Or saying what you thought of the police work in connection with the matter?

The Juror:     No.

The Court:     Have you discussed it with your fellow jurors?

The Juror:     No.

The Court:     Have your fellow jurors indicated to you any opinion about the case?

The Juror:     No.

The Court:     Have your fellow jurors indicated to you any opinion about the police work in connection with the matter?

The Juror:     There has been no discussion about the case at all.

Trial Tr. at 1320-23.

Judge Tomlinson then questioned the other jurors on the petit jury and asked them, *inter alia*, whether they had discussed the criminal matter with anyone else and whether they had learned that any other juror had discussed the trial with another individual.  Trial Tr. at 1330-

18

57.  Those jurors informed the County Court that they had not talked about the case with anyone, and that they were unaware of any other juror who had discussed the case.  Id.  Thus, petitioner's claim that a juror at his trial "improperly contacted and tried to influence the other jurors" at his trial is squarely contradicted by the trial court record.

The record further reflects that after Judge Tomlinson questioned those jurors, the court contacted the employer of the juror who had purportedly engaged in a discussion of Scheckells' criminal case.  That employer stated that the juror had volunteered that he was serving on a murder trial at which "some sloppy police work" had occurred.  Trial Tr. at 1402.  The following colloquy then ensued between the court, the prosecutor and defense counsel relative to this issue:

| | |
|---|---|
| The Prosecutor: | Well, Your Honor, I think at least there is a *prima facie* dispute between what was said. You confronted [the juror] with those words. And he said, "No, I never said that."  You now have his boss, a pharmacist also saying that he told him . . . "the police work was sloppy" . . . I think that we are at the horns of a dilemma, Your Honor because they are at complete odds as to what the conversation was. |
| The Court: | [W]hat is the defense position? |
| Defense Counsel: | Judge – |
| The Court: | I am really interested in whether or not the defense would consent to replacing that juror? |
| Defense Counsel: | We would oppose it and our position is that the [employer] you talked to him on the phone, even giving full credibility to his |

19

statement, it would appear that he was the one that engaged the juror in conversation. And not improperly so, since it appears that the juror is the employee of [the employer] and [he] began the conversation on the grounds he hasn't been at work for several nights, where have you been?  Told him he had been in a trial, which I think is appropriate for him to say.  When asked, which one, or what it was, he disclosed as he told us this morning, that it was a murder trial.  The only thing beyond that is that the juror may have in some passing remark, expressed something about police work, a negative comment – it was sloppy or something.  But the witness, [the employer] said that wasn't followed up on, it wasn't in response to questioning.  It wasn't, Judge, a comment made to another juror, or to anyone else involved in the trial.

The Court:          So as long as the defendant doesn't take the position that he would consent to the replacement of this juror, it is the Court's position that it hasn't been established that misconduct has occurred.  Obviously, one of the jurors may have made a comment, "sloppy police work".  I guess the next question would be whether or not either side wishes the Court to discuss the matter any further with that juror . . . to make sure that we don't leave a negative impression with him.  My thought right now is not discuss it any further with him.  There hasn't been presented to the Court sufficient evidence to remove him under the law.  I will give the People an opportunity to present any additional evidence they wish to the Court. And it looks as if the admonition made by the Court, which will of course again be made, is sufficient to cover this matter.  The Prosecutor, do you wish -

20

| | |
|---|---|
| The Prosecutor: | I won't ask you to inquire again.  I think that would just exacerbate the situation in his mind.  If more information comes to my attention, Your Honor, I will immediately bring it to your attention but at this point, based upon your conclusion, I don't see that we can do much more. |
| The Court: | Anything else by the defense? |
| Defense Counsel: | No, Judge, thank you. |
| The Court: | Are both parties ready to proceed? |
| Defense Counsel: | I believe so, Judge.  We have witnesses prepared . . . |

Trial Tr. at 1407-10.

Thus, after questioning the juror's employer and all members of the jury (including the individual who had purportedly engaged in misconduct), the County Court ultimately concluded that it had not been established that the juror had engaged in misconduct.  Trial Tr. p. 1408.  Such a determination "is essentially one of credibility, . . . [and] the trial court's resolution of such questions is entitled . . . to 'special deference.'"  Comfort v. Kelly, No. 96-CV-0778E(h), 1998 WL 384613, at *10 (W.D.N.Y. May 14, 1998) (Report-Recommendation) (quoting Patton v. Yount, 467 U.S. 1025, 1038 n.12 (1984)), adopted Comfort v. Kelly, No. 96-CV-0778, 1999 WL 955508 (W.D.N.Y. Oct. 5, 1999).

Petitioner has not provided any evidence that suggests that the trial court wrongfully found the juror competent to remain on the panel.  Moreover, this Court's review of the inquiry conducted by the trial court relating to this issue demonstrates that Judge Tomlinson correctly concluded that the juror who may have briefly discussed the criminal matter involving

21

Scheckells with his employer was properly allowed to remain on the jury.

"The question presented on habeas corpus review of a claim of juror misconduct is whether there is 'fair support in the record for the state court's conclusion that the juror[] [was] impartial.'" Comfort, 1998 WL 384613, at *10 (quoting Patton, 467 U.S. at 1038).  Petitioner has wholly failed to establish that the partiality of the juror – who, at most, suggested that law enforcement agents had performed "sloppy" work – could reasonably be questioned.[10]  He has further failed to establish that such juror's presence on the jury rendered his trial fundamentally unfair.  This Court therefore denies his second ground for relief.

### 3.  Ground Three

In his third ground, Scheckells argues that the trial court improperly imposed consecutive sentences on him despite the fact that the crimes of which he was convicted purportedly constituted a single act which warranted the imposition of concurrent sentences. See Am. Pet. (Dkt. No. 5) at Ground Three.

In New York, the discretionary power of trial courts in New York "includes the ability to impose consecutive penalties for multiple crimes."  People v. Ramirez, 89 N.Y.2d 444, 450 (1996) (citing Matter of Walker v. Walker, 86 N.Y.2d 624, 629 (1995)) (other citation omitted).  Furthermore, consecutive sentences may be imposed on a defendant "when the offenses are committed through separate and distinct acts, though they are part of a single

---

[10]  In fact, it is apparent that Scheckells' counsel believed that it would be ***beneficial*** for the juror whom petitioner now argues should have been removed from the panel ***to remain on the jury***.  As the above quoted text reflects, defense counsel specifically objected to the removal of the juror.  Trial Tr. at 1407-08; see also Scheckells, 305 A.D.2d at 724. Petitioner has never alleged in the state courts – and has not argued in this proceeding – that his trial attorney rendered ineffective assistance of counsel when he insisted that such juror remain on the jury.

transaction," even where the statutory elements of the offenses overlap.  See Ramirez, 89

N.Y.2d at 451.  Concurrent sentences are only *required* in New York where two or more

offenses are committed: "(1) 'through a single act or omission,' or (2) 'through an act or

omission which in itself constituted one of the offenses and also was a material element of the

other.'"  Bethune v. Superintendent, Bare Hill Corr. Facility, 299 F. Supp. 2d 162, 166

(W.D.N.Y. 2004) (quoting N.Y. PENAL LAW § 70.25(2)); see also People v. Laureano, 87

N.Y.2d 640, 643 (1996).

 In addressing Scheckells' sentencing claim, the Third Department found "no error" with

respect to the manner in which the County Court sentenced him.  See Scheckells, 305 A.D.2d

at 724.  This Court's review of that determination is therefore principally limited to

ascertaining whether consecutive sentences were permitted by law based upon the evidence

adduced at trial and, if so, whether the terms of those sentences were within the range permitted

by statute.  Long v. Lord, No. 03-CV-0461 (NPM), 2006 WL 1977435, at *14 (N.D.N.Y. Mar.

21, 2006) (McCurn, Senior D.J.).

 In determining whether concurrent sentences are required, habeas courts must examine

the statutory definition of the crimes of which the defendant was convicted and for which he

was sentenced.  See People v. Mack, 242 A.D.2d 543, 543-44 (N.Y. App. Div. 2d Dep't. 1997)

(citing Laureano, 87 N.Y.2d 640) (other citations omitted).  In conducting this analysis, courts

must determine whether the acts required to commit the crimes are identical for both offenses,

or if the act required for one offense is a material element of the second offense.  Laureano, 87

N.Y.2d at 643.  If neither of these elements are present, the imposition of concurrent sentences

is not legally required.  Id.

As noted above, Scheckells received consecutive sentences on his manslaughter and second degree weapons possession conviction.  A person is guilty of manslaughter in the second degree in New York "when [h]e recklessly causes the death of another person by creating and consciously disregarding a substantial and unjustifiable risk of death." People v. Lutes, 285 A.D.2d 739, 740 (N.Y. App. Div. 3d Dep't. 2001) (internal quotations and citations omitted); see also Trial Tr. at 1918-19.  Criminal possession of a weapon in the second degree is defined in N.Y. PENAL LAW § 265.03 as possession of a ". . . loaded firearm with intent to use the same unlawfully against another." People v. Okafore, 72 N.Y.2d 81, 87 (1988); see also Trial Tr. at 1945.  In this regard, it has been held that an individual uses a weapon unlawfully when he attempts to intimidate and threaten a victim, People v. Porter, 284 A.D.2d 931 (N.Y. App. Div. 4th Dep't. 2001), or when one points a gun at someone or threatens to kill them with such weapon.  People v. Herrera, 191 A.D.2d 585 (N.Y. App. Div. 2d Dep't. 1993).

At trial the prosecution established that after Wedderburn had accused Scheckells of slashing the tire, Scheckells went into his home, retrieved a shotgun and pointed the loaded gun at Wedderburn.  Trial Tr. at 1095.  Petitioner did not shoot Wedderburn, however, until after he and petitioner exchanged words and Wedderburn began walking up the steps of the porch on which petitioner was standing.  See Trial Tr. at 1095-98.  Thus, as the Third Department properly found, the trial court "may well have found that [Scheckells'] act of possessing the firearm was to threaten the victim, an act separate and distinct from that of shooting him." Scheckells, 305 A.D.2d at 724.

The foregoing establishes that the imposition of consecutive sentences on Scheckells was authorized under New York law.  See People v. Olds, 24 A.D.3d 571, 572 (N.Y. App. Div.

2d Dep't. 2005) (upholding validity of consecutive sentences; "although the offenses in question occurred within one extended transaction . . . the jury could have reasonably inferred that the defendant possessed the gun in question with the intent to use it unlawfully against another prior to and separate from the ultimate act") (citations omitted), leave denied People v. Olds, 6 N.Y.3d 836 (2006); see also Cross v. McGinnis, No. 01-CV-3411 (JBW), 2003 WL 21812024, at *7 (E.D.N.Y. July 23, 2003) (denying habeas claim challenging validity of consecutive sentences imposed on defendant found guilty of first-degree manslaughter and second-degree criminal possession of a weapon).  Thus, Scheckells' petition cannot be granted upon a claim that the imposition of consecutive sentences was impermissible.

Moreover, the length of the sentences imposed on Scheckells was within the range permitted by New York penal law.  See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (no federal constitutional issue exists where the sentence is within the range prescribed by state law).  Specifically, the five (5) to fifteen (15) year term of imprisonment imposed on Scheckells for his manslaughter conviction was authorized by law.  See Brown v. Greiner, 409 F.3d 523, 530 (2d Cir. 2005) ("[s]econd-degree manslaughter ordinarily carries a maximum sentence of fifteen years") (citing N.Y. PENAL LAW §§ 70.00(2)(c), 125.15).  Likewise, the seven and one-half (7 ½) to fifteen (15) year term imposed on Scheckells as a result of the second degree criminal possession of a weapon conviction did not exceed the term allowed by law.  See Naranjo v. Filion, No. 02Civ.5449(WHPAJP), 2003 WL 1900867, at *13 (S.D.N.Y. Apr. 16, 2003) (upholding sentence of seven and one-half (7 ½) to fifteen (15) years imprisonment following second degree criminal possession of a weapon conviction).  Thus, this theory does not afford the Court a basis for granting Scheckells' habeas application.

Arguably, this ground could be construed as a claim that the sentences imposed amount to a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." Rummel v. Estelle, 445 U.S. 263, 271 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." Rummel, 445 U.S. at 272; see Harmelin v. Michigan, 501 U.S. 957, 995 (1991) (the Eighth Amendment only forbids sentences which are "grossly disproportionate" to the crime); see also Hutto v. Davis, 454 U.S. 370, 374 (1982). A sentence of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense. Brumfield v. Stinson, 297 F. Supp.2d 607, 622 (W.D.N.Y. 2003) (citing Thompson v. Lord, No. 97-CV-0792, 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.) (other citations omitted). Since the sentences imposed on petitioner were not grossly disproportionate to the severity of his crimes, the third ground for relief in his amended petition must be denied.

### 4. Ground Four

In his fourth and final ground, Scheckells claims that he was denied his right to be present at all material stages of the criminal proceeding below because he was not present with his counsel when the County Court conducted a hearing relating to Scheckells' post-conviction CPL § 330.30 motion. See Am. Pet. (Dkt. No. 5) at Ground Four.

Respondent argues that this ground must be denied as, *inter alia*, factually inaccurate. See Resp. Mem. (Dkt. No. 11, Attach. 2) at 8.

Judge Tomlinson heard oral argument on Scheckells' CPL § 330.30 motion during the

same proceeding at which Scheckells was ultimately sentenced.  <u>See</u> Sentencing Tr. at 3-14.

The record clearly establishes that Scheckells was present at that proceeding.  <u>See</u> Sentencing

Tr. at 2 (County Court noting the presence of Scheckells in the courtroom prior to

commencement of hearing).  Accordingly, petitioner's claim that his constitutional right to be

present at all material stages of his trial was violated because he was not present at that

hearing[11] is patently without merit and accordingly denied.

Accordingly, it is hereby

**ORDERED**, that Scheckells' Amended Petition (Dkt. No. 5) is **DENIED** and

**DISMISSED**; and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

Dated:        May 11, 2007
              Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[11]  A criminal defendant has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings."  <u>Faretta v. California</u>, 422 U.S. 806, 819 n.15 (1975).